IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ex Parte Application of Novexco (Cyprus) Limited, NMLK PENNSYLVANIA CORP. and GENERALI ITALIA, S.P.A. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | MISC. ACTION NO. |

**MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Applicants, Novexco (Cyprus) Limited ("Novexco"), NLMK Pennsylvania Corp. ("NLMK") and Generali Italia, S.p.A. ("Generali"), submit this Memorandum of Law in Support of their Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782. As will be discussed further herein, Applicants meet the statutory requirements to obtain discovery under 28 U.S.C. § 1782 and the discretionary factors weigh heavily in favor of granting the Application. Therefore, this Court should grant the Application and permit service of the proposed subpoenas attached as Exhibits 1 and 2 to the Application.

**BRIEF FACTUAL BACKGROUND**

A recitation of the factual circumstances which given rise to this Application can be found in the accompanying declaration of Stefano Taccioli, Italian counsel for Novexco, NMLK and Generali. For the purposes of this Memorandum of Law, Applicants set forth a short summary of the facts for convenience with cross-references to the Taccioli Declaration (see Exhibit "A" to this Memorandum of Law).

Novexco, NMLK and Generali are the owners/sellers, buyers and insurers, respectively, of a certain cargo of 52,514 metric tons of steel slabs loaded at Tuapse, Russia for carriage to Gloucester City, New Jersey on board the M/V FRATZESCOS, a Liberian

flag oceangoing bulk carrier owned by Century Shipping & Trading Co. ("Century Shipping") and managed by Rainbow Shipmanagement, S.A. ("Rainbow Shipmanagement") (see Taccioli Declaration, ¶3, and Equasis Ship Folder for M/V FRATZESCOS, Exhibit "B" to this Memorandum of Law). The carriage of goods is governed, *inter alia*, by a GENCON voyage charter party dated at Lugano, Switzerland as of November 4, 2014, between Novamarine Carriers, S.A., as disponent owner of the M/V FRATZESCOS, and Novexco, as charterer of the vessel (see Taccioli Declaration, ¶4 and Exhibit "C" to this Memorandum of Law), and two CONGENBILL Bills of Lading Nos. PXBCTUPHFROSO101 and PXBCTUPHFROSO102 that list the consignee of the cargo as "To the Order of: Novexco" (see Taccioli Declaration, ¶4 and Exhibit "D" to this Memorandum of Law). Novexco is both the voyage charterer of the M/V FRATZESCOS and the seller of the cargo of steel slabs, as evidenced by the GENCON voyage charter party (Exhibit "C") and the two commercial Invoices Nos. 14-12-4976-4988 and 14-12-4989-4999 (see Taccioli Declaration, ¶5, and Exhibit "E" attached to this Memorandum of Law). Novexco, in turn, has agreed to sell the cargo of steel slabs to NLMK which is the ultimate consignee of the cargo and, upon information and belief, payment for the goods shipped on board the M/V FRATZESCOS is scheduled to be remitted by NMLK to Novexco in mid-April 2015 (see Taccioli Declaration, ¶6).

On or about December 20, 2014, shortly after completion of loading and departure from Tuapse, Russia, the M/V FRATZESCOS reportedly sustained damage to her stern tube assembly and deviated to Malta as a port of refuge to ascertain the extent of damage (see Taccioli Declaration, ¶7). The vessel subsequently sailed to Piraeus, Greece to carry out repairs afloat which necessitated partial discharge and storage of the cargo while repairs were effected (Taccioli Declaration, ¶8). As a result of the damage discovered and ensuing repairs, Century Shipping (the Owners of the M/V FRATZESCOS) have declared general

2

average and obtained an Average Bond executed by Novexco (see Taccioli Declaration, ¶9, and Exhibit "F" attached to this Memorandum of Law), and an Average Guarantee executed by Generali (see Taccioli Declaration, ¶9, and Exhibit "G" attached to this Memorandum of Law), to guarantee cargo interests' contribution to legitimate general average expenses incurred by the vessel interests as a result of the damage reported to the stern tube assembly, assuming some are found to be legally due. The M/V FRATZESCOS' general average expenses are preliminarily estimated to be in the $1,500,000.00 range (see Taccioli Declaration, ¶10). While the Average Bond (Exhibit "F") executed by Novexco is silent on the issue of jurisdiction and choice of law, the Average Guarantee executed by Generali (Exhibit "G") provides for the jurisdiction of the High Court of Justice of England and Wales, and English law (see Taccioli Declaration, ¶11). Accordingly, it is reasonably contemplated that a foreign proceeding will be filed in the near future to address the merits of the general average claim, and the instant Application seeks discovery of critical shipboard documents and evidence that is currently on board the M/V FRATZESCOS, a vessel which is expected to be within this Court's jurisdiction shortly (the vessel's current ETA at Gloucester City is March 27, 2015) (see Taccioli Declaration, ¶12).

Finally, Applicants would emphasize that this crucial documentation and evidence are critical to their ability to determine whether the M/V FRATZESCOS is entitled to declare a general average event as a result of the reported stern tube assembly damage (and whether the vessel interests are entitled to seek a general average contribution from cargo interests) (see Taccioli Declaration, ¶13). Moreover, while Applicants dispatched a marine surveyor to Piraeus, Greece to attend on board the M/V FRATZESCOS during repairs in late January/early February 2015 (Giovanni Martinoli of Martinoli & C. S.R.L.), that surveyor was restrained from speaking to the vessel's crew and was refused access to all relevant shipboard evidence (see Taccioli Declaration, ¶¶14 and 15). Thus, without an order from this

Court permitting Applicants Novexco, NMLK and Generali to serve the proposed subpoena on the Master of the M/V FRATZESCOS when that vessel calls at Gloucester City, Applicants will be deprived of crucial documents and evidence which are necessary to evaluate the merits of this general average claim (see Taccioli Declaration, ¶16).

## DISCUSSION

### I. Legal Requirements for Obtaining Relief Pursuant to 28 U.S.C. § 1782

¶28 U.S.C. § 1782(a) prescribes in relevant part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person, appointed by the court.

The purpose of Section 1782, as this Court has recognized, is to provide federal-court judicial assistance in obtaining evidence for use in a proceeding in a foreign or international tribunal. *Intel Corp.* v. *Advanced Micro Devices, Inc.,* 542 U.S. 241, 262 (2004); *In re Mesa Power Group,* LLC, ll-MC-270, 2013 U.S. Dist. LEXIS 67091; 2013 WL 1890222 (D.N.J. April 19, 2013).

On an application for discovery pursuant to 28 U.S.C. § 1782, this Court must determine whether the applicant has made a prima facie showing of three threshold statutory requirements: (1) that the person or entity from whom discovery is sought resides or is found in the district where the petition is made; (2) that the applicant is seeking testimony or documents for use in a proceeding in a "foreign or international tribunal;" and (3) that the applicant is an "interested person" with respect to the underlying proceeding. *In re Bayer AG,* 146 F.3d 188, 193 (3d Cir. 1998); *In re Mesa Power,* 2013 U.S. Dist. LEXIS 67091, *7-8.

Once the aforementioned requirements are met, the Supreme Court has delineated four additional discretionary factors that a district court must consider in evaluating whether

to exercise its discretion in favor of the application for discovery, namely whether: (a) the person from whom discovery is sought is a participant in the foreign proceedings; (b) the foreign tribunal would be receptive to the U.S. discovery obtained via Section 1782; (c) the application conceals an attempt to circumvent foreign proof-gathering restrictions; and (d) the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

This Court has routinely, and very recently in the context of an international maritime dispute, granted applications for discovery under §1782. *See In re Owl Shipping, LLC*, 2014 WL 5320192 (D.N.J. Oct. 17, 2014).

As will be discussed further herein, Applicants Novexco, NMLK and Generali have met both the statutory requirements and have demonstrated that the discretionary factors weigh heavily in their favor.

## II. Applicants Novexco, NMLK and Generali Have Demonstrated the Statutory Requirements

### A. The Party From Whom Discovery Is Sought Is Found In This District

The M/V FRATZESCOS and her Master and crew will be within this Court's jurisdiction shortly as evidenced by the Taccioli Declaration, ¶12, and the CONGENBILL Bills of Lading (Exhibit "D") confirms the vessel will be discharging her cargo of 52,514 metric tons of steel cargo at the Port of Glouchester City.

### B. The Discovery Sought Is For Use in A Foreign Tribunal

The Taccioli Declaration confirms that it is reasonably contemplated that a foreign proceeding will be filed in the near future to consider the merits of the M/V FRATZESCOS' general average claim. This contemplated foreign proceeding, under the terms of the Average Guarantee executed by Generali, satisfies the requirement of Section 1782:

> CONECEL claims that it seeks the requested discovery for use in contemplated civil and criminal proceedings in Ecuador against its former employees. We agree that these contemplated proceedings satisfy section 1782. In Intel, the Supreme Court explained that "Section 1782(a) does not limit the provision of judicial assistance to

5

'pending' adjudicative proceedings. In 1964, when Congress eliminated the requirement that a proceeding be 'judicial,' Congress also deleted the requirement that a proceeding be 'pending.' "Intel, 542 U.S. at 258, 124 S.Ct. 2466. Instead, the Supreme Court held that section 1782(a) requires only that a proceeding "be within reasonable contemplation." Id. at 259, 124 S.Ct. 2466; accord In re Letter of Request from the Crown Prosecution Serv. of the U.K., 870 F.2d 686, 691 (D.C.Cir.1989) (Ginsburg, J.). The future proceedings must be more than speculative, however, and a "district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." Crown Prosecution Serv., 870 F.2d at 692; see also id. at 691 (describing the "decisive" question as whether there was "sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially").

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014).

This Court's decision in *In Re Oxus Gold PLC*, No. MISC 06-82 GEB, 2007 WL 1037387, at *6 (D.N.J. Apr. 2, 2007) agrees with and quotes the same *Intel* decision cited by the Eleventh Circuit. *Oxus Gold* concerned a Section 1782 request for a deposition of an individual (Barbanel) in relation to judicial proceedings instituted against the government of Kyrgyzstan by a corporate entity (with whom Barbanel was affiliated, but in which suit he was not involved as a party). Oxus Gold sought Barbanel's deposition under Section 1782, in connection with both an arbitration (commenced pursuant to a UK-Kyrgyzstan treaty) and the Kyrgyzstan proceedings. Barbanel argued that the arbitration was not a proceeding as contemplated by Section 1782; and that, because the Kyrgyzstan proceedings were on appeal – and thus because his deposition could not be admissible given the stage of the proceedings – those proceedings likewise could not satisfy 1782. The *Oxus Gold* court disagreed, both because of the existing Kyrgyztstan proceedings and because of reasonably imminent additional proceedings (the "Compensation Claim"):

> Finally, the Supreme Court in Intel held that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' [or imminent] adjudicative proceedings." *Intel*, 542 U.S. at 258. The Court held instead that Section 1782(a) should be read only to require that it be "within reasonable contemplation" that the evidence sought would be used in a dispositive proceeding. Id. at

6

> 259, citing *In re Crown Prosecution Serv.*, 870 F.2d 686, 691 (D.C.Cir.1989). In the case at bar, it is within reasonable contemplation (1) that the matters before the Kyrgyz Court proceedings would be remanded back to the trial court (rendering the discovery at issue here "of use" in those proceedings) and (2) that the Compensation Claim would be litigated in the near future. The fact that any information elicited pursuant to the Section 1782 Order may not be immediately presented to the foreign courts does not compel Judge Hughes to vacate the Section 1782 Order.

*In re Oxus Gold PLC*, No. MISC 06-82-GEB, 2007 WL 1037387, at *6 (D.N.J. Apr. 2, 2007). See also *In re Pimenta*, , 942 F.Supp.2d 1282 (S.D.Fla. 2013); *In re Application of Mesa Power Group, LLC*, 878 F.Supp.2d 1296 (S.D. Fla. 2012)

Thus, this Court's decision in *Oxus Gold* likewise supports the argument that Section 1782 only requires a reasonably imminent proceeding in order to allow for discovery thereunder.

It should also be noted that the Third Circuit (although not squarely addressing this issue) makes passing – but approving- reference to the propriety of a Section 1782 request in an international maritime contract dispute:

> On May 15, 2003, Sinochem filed an action in the Eastern District of Pennsylvania, in which it sought discovery, pursuant to 28 U.S.C. § 1782,5 regarding various aspects of the Vessel's loading, the charter party, and the bill of lading for use in an ' imminent foreign proceeding.' The District Court granted this limited discovery.

*Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 351 (3d Cir. 2006) *rev'd on other grounds*, 549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)

Moreover, the District Court for the D.C. Circuit has indicated citing *Intel* (albeit in the context of a foreign magistrate's preliminary criminal investigation) that foreign proceedings need not even be imminent for purposes of enforcing Section 1782 discovery: "[The Supreme Court in *Intel*] has made clear that an adjudicative proceeding need be neither pending nor imminent for an applicant to invoke §1782(a) successfully[.]" *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011) *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. §1782*, 473 F. App'x 2 (D.C. Cir. 2012) (per curiam). See also *United States v. Sealed 1, Letter of Request for*

7

*Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1205 (9th Cir. 2000) (discussing lack of any "imminence" requirement for Section 1782 discovery, in criminal context).

Finally, a leading federal treatise agrees with the premise that a foreign proceeding need only be reasonably contemplated: "It is not necessary that the international proceedings be 'pending' [to warrant Section 1782 discovery]."§ 2005.1Exclusiveness of Procedures—Foreign Discovery, 8 Fed. Prac. & Proc. Civ. § 2005.1 (3d ed.)

Accordingly, Novexco, NMLK and Generali have satisfied the second statutory requirement of Section 1782 discovery, notwithstanding the lack of instituted foreign proceedings.

### C. Applicants are "Interested Persons" In The Foreign Proceeding Within the Meaning of Section 1782

The Supreme Court has acknowledged that the term "interested person" should be interpreted broadly and includes both litigants as well as other parties who possess a reasonable interest in obtaining judicial assistance. *Intel,* 542 U.S. at 256-57. Applicants, Novexco, NMLK and Generali, in their respective capacity as owner/seller, buyer and insurer of the cargo of 52,514 metric tons of steel cargo (from whom a general average contribution is being sought), and necessary parties to a reasonably contemplated foreign proceeding, are "interested persons" within the purview of the statute. *Id.* at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

### III. The Four Discretionary Factors Favor Granting the Application

#### A. The M/V FRATZESCOS, her Master and Crew are unlikely to be Parties to the Foreign Proceeding

The M/V FRATZESCOS, *in rem,* her Master and crewmembers are unlikely to be parties to the foreign proceeding that will be filed with the English High Court. Upon information and belief, the M/V FRATZESCOS' Master and crewmembers are likely

8

employed by the vessel's manager, Rainbow Shipmanagement, or the vessel's owner, Century Shipping, both of whom will likely be parties to the foreign proceeding in the English High Court. However, it is unclear whether Novexco, NMLK and Generali will have access to the vessel's Master and crewmembers (and documentation and evidence currently in their possession) in the foreign proceeding, given that the vessel and crew may (and likely will) be at sea calling at various ports around the world during the duration of any foreign proceeding; or even whether the Master and crewmembers will still be employed when the foreign proceeding is pending. Thus, the foreign court may (and likely will) be unable to compel them to appear and provide documents and/or evidence in that proceeding, notwithstanding that Rainbow Shipmanagement and/or Century Shipping may themselves be parties thereto.

In this regard, the Supreme Court has observed that the need for Section 1782 assistance is of particular importance when the person from whom discovery is sought is a non-party in the underlying foreign proceeding: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel,* 542 U.S. at 264. This Court has likewise recognized this holding. S*ee also In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) (quoting *Intel*). Applicants respectfully submit that Section 1782 relief is crucial to Applicants' ability to obtain the requested documents and evidence from the M/V FRATZESCOS' Master and/or crewmembers, all of whom will shortly be located in Gloucester City, Camden County within the jurisdiction of this Court.

Moreover, district courts - including this Court within the last six months - have routinely granted applications for discovery under §1782 in the context of international maritime disputes involving cargo and/or vessel damage, when the critical evidence and documentation concerning an incident is within the exclusive knowledge of the Master and crew on a vessel trading internationally. *See, e.g., Ex rel Application of Winning (HK)*

*Shipping Co. Ltd.*, 2010 WL 1796579 (S.D. Fla. Apr. 30, 2010); 2010 A.M.C. 1761; *Navegacion In re Campania Chilena de Navegacion*, 2004 WL 1084243, at *1 (E.D.N.Y. Feb. 6, 2004); 2004 A.M.C. 443 (ordering discovery in New York under *inter alia* §1782, including shipboard documents and crew depositions, in dispute regarding vessel fire in Ecuador); *see also In re Owl Shipping, LLC*, 2014 WL 5320192, (D.N.J. Oct. 17, 2014) (ordering discovery under §1782 from domestic affiliate of foreign shipowner regarding shipowner's financial status).[1]

### B. The Foreign Tribunal Will Be Receptive To The Requested Discovery

As the Supreme Court has stated, the second discretionary factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264. As the Third Circuit has held, the burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party opposing the application. *In re Bayer*, 146 F.3d at 196. Indeed, courts have been reluctant to deny Section 1782 assistance absent authoritative proof that the foreign tribunal would reject the evidence sought. *In re Euromepa S.A.*, 51 F.2d 1095 (2d Cir. 1995). There, the Second Circuit rejected the nalytical approach the district court adopted to determine the French tribunal's "attitude" to the discovery obtained in the U.S. via Section 1782. In the Second Circuit's view, such an approach resulted in an unnecessary and extensive analysis of French law (based on equivocal declarations from "experts" on French law) as to whether such discovery would offend the French court:

> [W]e believe that a district court's inquiry into the discoverability of requested material should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. Such proof, as embodied in a forum county's judicial,

---

[1] In this regard, it bears noting that "the 1949 amendment [to §1782, and other amendments in the interim] explicitly broadened the class of people subject to discovery beyond United States residents[,] [and] Congress made this change expressly so that people temporarily in a district may be ordered to give testimony [and/or other evidence locate in a judicial district] pursuant to § 1782(a)." *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002). "Consequently, if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district." *Id.*

> executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigations with international aspects."

*In re Euromepa*, 51 P.3d at 1100. *See also In re Bayer AG*, 146 P.3d at 196 ("Inasmuch as relevant evidence is presumptively discoverable under § 1782. the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application...").

While the London High Court will likely have discretion to accept evidence that is submitted to it, there is no reason to suspect that the Tribunal would not be receptive to obtaining timely documents and evidence from the M/V FRATZESCOS, her Master and/or crewmembers regarding the reported damage to the vessel's stern tube assembly, particularly since those documents and evidence will be crucial to the foreign tribunal's adjudication of the general average claim on the merits. *In re Gemeinschaftspraxis Dr. Med Schottdorf*, No. M-19-88, 2006 U.S. Dist. LEXIS 94161, 25-26 (S.D.N.Y. Jan. 4, 2007) (applicant need only have "a good faith belief that it will be able to use the [Section 1782] evidence in the Social Court Action"). Accordingly, this factor also favors the granting of the application. In fact, English courts have accepted evidence obtained under Section 1782 in the past.

### C. This Application Is Not An Attempt To Circumvent Proof-Gathering Restrictions In the Contemplated Foreign Proceeding

The third discretionary factor for the Court to consider is whether the Applicants are seeking to circumvent foreign proof-gathering restrictions by their application. This factor requires the Court to evaluate not whether the foreign tribunal's discovery rules provide a means to access the requested information but rather whether the party intends to use Section 1782 to avoid explicit foreign restrictions. As demonstrated by the Taccioli Declaration, ¶¶12-16, Applicants are simply attempting to determine whether the M/V FRATZESCOS is entitled to declare a general average event as a result of the reported stern tube assembly

11

damage (and are not attempting to end-run or circumvent foreign proof gathering restrictions).

Moreover, the English House of Lords has previously approved the use of Section 1782 as a proper vehicle to obtain evidence without offending English law. (See Taccioli Declaration ¶17 and; *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N V* [1987] 1 App. Cas. 24 (1986)(a copy of which is attached to the Taccioli Declaration). The U.S. Supreme Court and the Third Circuit have approvingly cited the House of Lord's *South Carolina Ins.* opinion as proof that, even in jurisdictions where pre-trial discovery is limited and not as expansive as in the United States, Section 1782 discovery would not offend English laws or procedures. *Intel,* 542 U.S. at 261-62; *In re Bayer AG,* 146 F.3d at 194-195. Thus, English courts are receptive to §1782 assistance from US courts.

In the *South Carolina Ins.* case, one of the litigants in a re-insurance lawsuit sought Section 1782 discovery from non-parties located in the Western District of Washington. *In re Bayer AG,* 146 F.3d at 194. The English Commercial Court enjoined the parties from pursuing the Section 1782 application, since such a procedure, in the Court's view, interfered with the English Court's right "to retain the control of its own procedure and the proceedings that are before it." *Id.* The House of Lords overturned the lower court's decision on appeal, ruling that, despite the inability of the English Court to compel discovery, Section 1782 did not interfere with the Court's control of its own process and that discovery obtained pursuant to Section 1782 discovery would not be offensive to English jurisdiction. *Id.* at 194-195. *See also Intel,* 542 U.S. at 261-62 ("House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782"). These explicit recognitions by the English House of Lords, the U.S. Supreme Court, and the Third Circuit Court of Appeals are highly persuasive with regard to the second and third discretionary *Intel* factors and counsel that they both weigh in favor of Applicants Novexco, NMLK and Generali.

The application in no way constitutes a vehicle to end-run or circumvent English discovery rules or violate English law, public policy or proof-gathering restrictions. The application is a good-faith attempt to acquire highly relevant documents and evidence that Applicants will require in the contemplated English High Court proceeding. *In re Bayer AG*, 146 F.3d at 194-195 (The House of Lords "held that parties to an English litigation were entitled to prepare their case by obtaining documents in a foreign country and this included the right to seek discovery under § 1782"). Accordingly, this factor weighs in favor of the Court granting the requested discovery.

### D.   The Discovery Request Is Not Unduly Intrusive or Burdensome

The fourth and final discretionary factor requires the Court to consider whether the discovery sought is intrusive or imposes an undue burden on the parties from whom the documents, evidence and/or testimony is sought. *Intel*, 542 U.S. at 265. The documents and evidence being sought from the respondents is directly relevant to the contemplated foreign proceeding and, in particular, to the issue of whether the M/V FRATZESCOS is entitled to declare a general average event as a result of the reported stern tube assembly damage (and obtain a general average contribution from Applicants). Hence, the Applicants' requested discovery is not unduly intrusive or burdensome and is narrowly tailored to obtain information, documents, evidence and/or testimony within this judicial district.

### CONCLUSION

Applicants Novexco, NMLK and Generali have satisfied the three statutory requirements under 28 U.S.C. § 1782 for obtaining discovery in aid of a foreign proceeding. As established in the Declaration of Stefano Taccioli and the exhibits attached to this Memorandum of Law, the discretionary factors weigh heavily in support of granting the requested relief. Therefore, this Court should enter the proposed order granting the Ex Parte Application, permitting Novexco, NMLK and Generali to serve the subpoenas attached to the Application as Exhibits 1 and 2, and ordering the United States Marshal for the

District of New Jersey to serve the subpoenas upon the arrival of the M/V FRATZESCOS in this judicial district.

Dated: March 25, 2015

By: /s/ Susan Kennedy

WIGGIN AND DANA LLP
Susan Kennedy (N.J. Id. No. 018391990)
Joseph Grasso
Two Liberty Place
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102
(215) 988-8320
skennedy@wiggin.com

*OF COUNSEL*

BAKER, DONELSON, BEARMAN,
CALDWELL &. BERKOWITZ, P C
    Christopher O. Davis
    LA Bar No.4722
    codavis@bakerdonelson.com
    Christopher M. Hannan
    LA Bar No. 31765
    channan@bakerdonelson.com
    201 St. Charles Ave., Suite 3600
    New Orleans, Louisiana 70170
    Telephone: (504) 566-5200
    Facsimile: (504) 636-4000